UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:07-CV-00068

MATT HOPKINS                                                   PLAINTIFF

v.

FORD MOTOR COMPANY                                            DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant Ford Motor Company's motion for summary

judgment [DN 60].  Fully briefed, the matter is ripe for decision. For the reasons set forth below, the

Defendant's motion is **GRANTED.**

## I.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no

genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its

motion and of identifying that portion of the record which demonstrates the absence of a genuine

issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Once the moving party

satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a

genuine issue of fact for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

party, the non-moving party is required to do more than simply show there is some "metaphysical

doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.

## II. BACKGROUND

This controversy arises out of an injury that resulted when a Ford motor vehicle crashed due to unintended acceleration. Plaintiff Matt Hopkins, a car wash attendant, was employed by Tender Touch Car Wash to move vehicles to a drying/detailing area once the cars had completed an automatic wash cycle. On April 13, 2006, Plaintiff attempted to move a 2002 Ford Mercury Grand Marquis after the vehicle had passed through the car wash. Plaintiff entered the vehicle and, with his left leg outside the vehicle, he shifted the vehicle into gear. The vehicle suddenly accelerated into a ditch. The knee of his exposed leg was injured in the accident. The parties dispute what caused the Grand Marquis to unexpectedly accelerate. Plaintiff alleges the vehicle accelerated because electromagnetic interference ("EMI") caused the cruise control system to engage. Defendant argues that Plaintiff accidentally hit the accelerator and no defect existed with the vehicle's cruise control  system.

## II. DISCUSSION

Based on Plaintiff's theory of the case, various causes of action have been asserted against Defendant including: (1) negligent design; (2) negligent manufacture; (3) negligent failure to warn; (4) strict products liability; (5) breach of warranty; and (6) fraud. Plaintiff voluntarily withdrew his

claims based on breach of warranty and negligent manufacture.  (See Pl.'s Resp. to Def.'s Mot. Summ. J. 1, n.1.)  Accordingly, summary judgment is appropriate as to those claims.  This opinion will address the remaining claims.

## A.  Negligent Design, Negligent Failure to Warn and Strict Products Liability

Defendant argues that Plaintiff's negligent design, failure to warn, and strict products liability claims must be dismissed because Plaintiff has failed to put forth evidence of a feasible alternative design.  Plaintiff argues that evidence of such a design is not necessary in this case and, in the alternative, Plaintiff's experts did put forth the required evidence.

In a product liability case such as this, "the question is whether the product creates such a risk of an accident of the general nature of the one in question that an ordinarily prudent company engaged in the manufacture of such a product would not have put it on the market." Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 780 (Ky. 1984) (quotation omitted).  In specifically addressing a design defect case, the Kentucky Supreme Court has stated:

> A plaintiff in Kentucky can bring a defective design claim under either a theory of negligence or strict liability.  The foundation of both theories is that the product is 'unreasonably dangerous'. . . . So under either theory, it is the legal duty of a manufacturer to use reasonable care to protect against foreseeable dangers.  In a design defect case courts use some form of risk-utility analysis to assess the decisions made by manufacturers with respect to the design of their products.

Ostendorf v. Clark Equip. Co., 122 S.W.3d 530, 535 (Ky. 2003).

The risk-utility analysis balances the available alternative designs with the risk of the chosen design. Toyota Motor Corp. v Gregory, 136 S.W.3d 35, 42 (Ky. 2004).  Relevant factors in this analysis include the usefulness of the product, the probability it will cause injury and "the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making

3

it too expensive to maintain its utility." David J. Leibson, Ky. Prac. Tort Law § 13:7 (2011). Kentucky law states that all products liability actions, "regardless of whether the case involves failure to adequately warn, defective design or other products liability theories, [require proof that] the product is defective." Leslie v. Cincinnati Sub-Zero Products, Inc. 961 S.W.2d 799, 803-804 (Ky. App. 1998). In sum, in order to prove a defective design, Plaintiff must show that the design is unreasonably dangerous under a risk-utility analysis.

### 1. Requirement of Alternative Designs

In Toyota, the Kentucky Supreme Court found that proof of an alternative design was a required element of a defective design theory in a crashworthiness, or enhanced injury, claim. 136 S.W.3d 35. The Court stated that "Kentucky law . . . stands for the proposition that design defect liability requires proof of a feasible alternative design." Id. at 41. It also gave attention to the Reporter's Note to the Restatement which found that, as a jurisdiction that applies the risk-utility test, Kentucky implicitly requires proof of a reasonable alternative design. Id; See Restatement (Third) of Torts: Products Liability, § 2 cmt. d (1998). When a manufacturer places a product on the market it must be aware of the potential risks of the product and weigh those risks against the value and necessity of its product. "A decision not to put the product on the market as designed leaves the company with two options - to use a safer alternative design, or not to put the product on the market at all." Toyota, 136 S.W.3d at 42. Although the Kentucky Supreme Court left for another day the express adoption of the Restatement (Third) of Torts, it based its decision on Kentucky product liability decisions that suggested the need for an alternative design. Id. at 42 (See Jones v. Hutchinson Manufacturing, Inc. 502 S.W.2d 66 (Ky. 1973); Nichols v. Union Underwear Co. (602 S.W.2d 429 (Ky. 1980)).

4

Since 2004, Federal district courts in Kentucky, applying the reasoning set forth in Toyota, have extended the reasonable alternative requirement to all design defect products liability claims. See Low v. Lowe's Home Centers, Inc., 771 F.Supp. 2d 739, 741 (E.D. Ky. Feb. 14, 2011) ("To prove a design defect, he must show that the defendants could have used a safer, and still feasible, design."); Snyder v. Am. Honda Motor Co., Civil Action No. 6:07-241 KKC, 2009 WL 2342733, at *5 (E.D. Ky. July 28, 2009) (in extending the requirement of a reasonable alternative to a defective tie rod in an all-terrain vehicle, the court stated that Plaintiffs' expert failed "to establish a crucial element of Plaintiffs' products liability case: a defectively designed or manufactured product.  To prove that a product was defectively designed, Plaintiffs must provide proof of a reasonable alternative design."); Busch v. Ansell Perry, Inc., Civil Action No. 3:01 CV-126-H, 2005 U.S. Dist. LEXIS 12175, at *9 (W.D. Ky. June 15, 2005) (the discussion in Toyota "suggests that evidence of a feasible alternative and safer design is required to prove most product design defect claims," including a design defect claim involving latex gloves.); Cameron v. DaimlerChrysler, Corp., Civil Action No. 5:04-CV-24-JMH, 2005 WL 2674990, at *9 (E.D. Ky. Oct. 20, 2005) (in this case involving a parking brake assembly in a Jeep Wrangler "[p]roving there was an alternative design that was feasible and cost effective [was] part of the plaintiff's proof for a defective design claim . . . .").

While there may be some lingering question as to whether a reasonable alternative is a necessary element for all design defect claims, the Court finds that in this case, in order for the Plaintiff to prevail on his design defect claims, he must submit proof of a feasible alternative design.[1]

---

[1] In the alternative, Plaintiff could show that the product  is so unreasonably dangerous that it should not have been put on the market at all, however, Plaintiff has not made any such argument.

### 2. Mr. Armstrong's Qualifications in Offering Alternative Designs

Plaintiff has listed Keith Armstrong as an automobile electronics expert to testify that alternative designs were available.  Defendant argues that Armstrong's testimony must be excluded under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and its progeny.

Fed. R. Evid. 702.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper and has the "responsibility of screening [] evidence." Jahn v. Equine Servs, PSC, 233 F.3d 382, 388 (6th Cir. 2000) (citing Daubert, 509 U.S. at 589).  In determining whether an expert is qualified, "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." Morales v. Am. Honda Motor Co., Inc., 151 F.3d 500, 516 (6th Cir. 1998).  "Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion has a reliable basis in the knowledge and experience of the discipline.'" Jahn, 233 F.3d at 388 (quoting Daubert, 509 U.S. at 592).

Under Rule 702, an expert is qualified by his knowledge, skill, experience, training or education. Fed. R. Evid. 702.  Mr. Armstrong's degree is in  electrical engineering and for the last several years he has worked as a consultant providing electronic design services.  (Armstrong Dep. 29:23, 39:4-40:8)  His work with automobiles is limited to two consulting experiences (one with a component supplier on a speed control system that governed the speed and the other as a consultant

6

for a subcomponent supplier on a gas saving engine) and co-teaching a week long training course in Australia regarding EMC standards and testing requirements for auto designers.  (Id. at 34:2-35:6, 36:18-37:9, 57:12-21)  Mr. Armstrong has never been employed by any automobile manufacturer or automotive component part supplier.  (Id. at 31:11-25)  He also has never designed or tested an automotive cruise control system.  (Id. at 33:17-20)  Mr. Armstrong first began his work with cruise control systems in late 2007 when hired by Plaintiff's attorney. (Id. at 10:21-11:16)

Mr. Armstrong offers three alternative designs that Ford could have used in its Next Generation cruise control system.  He proposes failsafe designs that operate independently of the driver and cruise control electronics.  The alternatives he proposes are: 1) a single independent low-technology electronic circuit; 2) a fuel restriction valve; and 3) a butterfly valve currently used by BMW.  (Armstrong Aff. at 10).  However, he has not designed or built any of these systems, and given his lack of automotive design experience, he is simply unqualified to give an opinion that an actual feasible alternative existed at the time this vehicle was manufactured.  Even if he could design such a system, he lacks the knowledge and expertise to opine that it could actually be incorporated into a  production vehicle. Accordingly, the testimony of Keith Armstrong regarding alternative designs is excluded.

Having excluded the testimony of Armstrong regarding feasible alternative designs, the Plaintiff is unable to prove his negligent design claim or his strict products liability claim.  This is also true of his negligent failure to warn claim because it is based on the assertion that the product is defective, and thus, unreasonably dangerous in the absence of warnings.  In his Complaint, Plaintiff alleges that Ford knew or had reason to know of certain defects with the cruise control system and Ford "breached its duty to warn by failing to warn owners, users or passengers, including

Matt Hopkins, of the 2002 Mercury marquis regarding the failure mechanisms herein described before putting this vehicle into the stream of commerce."  (Complaint, ¶ 21, 23).

In Kentucky and the Restatement (Second) Torts § 388, a defendant is liable under a negligent failure to warn claim if he "(a) knows or has reason to know that the chattle is likely to be dangerous for the use for which it is supplied, (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." Tipton v. Michelin Tire Co., 101 F.3d 1145 (6th Cir. 1996) (citing Restatement (Second) of Torts § 388 (1965)).  Tipton was a defective design case and the Sixth Circuit determined that proof of a defective product is essential to a products liability claim or a negligence claim. Id. at 1150 (citing Sexton ex rel. Sexton v. Bell Helmets, 926 F.2d 331 (4th Cir. 1991) and Jones v. Hutchinson Mfg., Inc., 502 S.W.2d 66, 69-70 (Ky. 1973)).  However, the Court failed to distinguish between the various products liability claims.  After discussing the differences between a strict liability failure to warn claim and a negligent failure to warn claim, the Court made the general statement that "proof of a defective product is essential to the products liability or the negligence claim" in the context of a product liability claim that is based on a design defect.  Tipton, 101 F.3d at 1150.  It appears that the Court was inferring that all design defect claims, including negligent failure to warn claims, require proof of a defective design.

Two years later, the Kentucky Court of Appeals specifically stated that all product liability actions, "regardless of whether the case involves failure to adequately warn, defective design or other products liability theories, [require proof that] the product is defective." Leslie, 961 S.W.2d 803-04 (citing Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 782 (Ky. 1984)).

8

At the hearing, Plaintiff cited to a New York case, <u>Jarvis v. Ford Motor Co.</u>, 283 F.3d 33 (2nd Cir. 2002), presumably to make the point that circumstantial evidence may be used to prove a product defective.  Kentucky law also allows the use of circumstantial evidence to prove a defect under certain facts.  <u>See</u> <u>Perkins v. Trailco Mfg. And Sales Co.</u>, 613 S.W.2d 855 (Ky. 1981). Although circumstantial evidence might be sufficient to prove a manufacturing defect in a given case, it is difficult to imagine how it would suffice to prove a design defect case.  As noted previously, it is not enough to simply show that the accident would not have occurred had the product been designed differently.  <u>Jones</u> 502 S.W.2d at 70-71.  The Plaintiff must also provide proof of a feasible alternative design.  In this case, there is no direct or circumstantial evidence which is sufficient to do so.

Accordingly, Plaintiff's negligent design, negligent failure to warn and strict products liability claims are dismissed.

## B. **Fraud**

Defendant argues that Plaintiff's fraud claim must be dismissed because there is no evidence to support this claim.  Specifically, Defendant argues that Plaintiff has shown no evidence that he heard, read or relied on any misrepresentations made by the Defendant.  In Kentucky, a fraud claim requires proof of six elements: "(1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff." <u>Flegles, Inc. v. TruServ Corp.</u>, 289 S.W.3d 544, 549 (Ky. 2009) (citing <u>United Parcel Serv. v. Rickert</u>, 996 S.W.2d 463 (Ky. 1999)).  Plaintiff never responded to this argument in

his response.  "[A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence.  Instead the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment."  Cox v. Kentucky Dept. Of Transp., 53 F.3d 146, 150 (6th Cir. 1995) (citing Street v. J.C. Bradford & Co., 866 F.2d 1472 1479 (6th Cir. 1989)).

No affirmative evidence has been produced to show that there is an issue of material fact in regard to the fraud claim.  Accordingly the fraud claim is dismissed.

**C.  Punitive Damages**

Because all of Plaintiff's claims have been dismissed, the claim for punitive damages is denied as moot.

**IV. CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** Defendant's Motion for Summary Judgment [DN 60] is **GRANTED**.   Defendant's Motion to Exclude the Testimony of Plaintiff's Expert William Berg [DN 57], Plaintiff's Motion to Exclude the Testimony of Victor J. Declercq [DN 61], and Defendant's Motion to Strike Plaintiff's Supplemental Memorandum in Support of Their Motion to Preclude the Testimony of Victor J. Declercq or, in the Alternative, Motion for Leave to File a Response to Plaintiff's Supplemental Memorandum [DN 83] are **DENIED AS MOOT**.

cc. Counsel of Record